O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | | |
|---|---|---|
| JUDITH WALKER, | ) | Case No. CV 02-6941-ODW (MLG) |
| | ) | |
|        Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | DENYING PLAINTIFF'S MOTION FOR |
|        v. | ) | LEAVE TO AMEND COMPLAINT |
| | ) | |
| DOES 1-10, | ) | |
| | ) | |
|        Defendants. | ) | |
| | ) | |

This matter is before the Court on Plaintiff's motion for leave to amend the Second Amended Complaint. Plaintiff seeks to replace Doe Defendants 1-10 (Employees of Los Angeles County) with Frances Quary, Berta Curry, and Frank Schiavone, all of whom are employed by Los Angeles County. She also seeks to amend the complaint to add numerous new state common law and federal claims, including interference with prospective economic advantage, malicious prosecution (malicious institution of civil proceedings), abuse of process, violation of the Fair Credit Reporting Act, invasion of privacy (false light), racketeering, and violation of the Fourth Amendment. In determining whether to permit the proposed amendment, the Court must consider the

following questions: (1) whether Plaintiff may amend the complaint to add seven new causes of action five years after the original complaint was filed on September 5, 2002; and (2) whether the proposed amended complaint states a claim for relief upon which relief may be granted against the proposed defendants. For the reasons discussed below, Plaintiff's motion to amend is **DENIED**.

## I. Facts and Procedural Background

The Court has previously stated various iterations the underlying facts in prior orders and will state only the facts relevant to this order. These facts are taken from Plaintiff's four separate complaints, and the Court presents them in a light most favorable to Plaintiff.[1]

As part of its statutory obligations, local child support agencies are charged with submitting updated lists of "support obligors found to be out of compliance with a judgment or order for support" to the California Department of Child Support Services ("CDCSS") on a monthly basis. Cal. Fam. Code §§ 17520(a)(3), (b). The state agency then consolidates the lists received from the local agencies and provides a copy of the consolidated list to licensing boards, including the California State Bar, the Medical Board of California, and the California Department of Motor Vehicles. *Id.* §§ 17520(a)(2), (c).[2] It is the responsibility of each licensing board

---

[1] Because this lawsuit has been pending for more than five years, certain background facts not immediately apparent on the complaint's face are part of this record and inform this decision.

[2] Although the California statutes do not include credit agencies in the list of entities requiring notice of an obligor's delinquency, it appears to be undisputed that the CDCSS also notifies credit agencies of delinquencies.

head

to serve a licensee with notice of the board's intent to withhold issuance or renewal of the license based upon the licensee's lack of compliance. *Id.* §§ 17520(e)(2), (f). The local child support agency's statutory duties end when it compiles the list of noncompliant obligors and submits it to the CDCSS.

Plaintiff claims that in 2000, she was a licensed medical doctor. She also has stated that she completed law school, though she has not been licensed in California. Plaintiff's ex-husband, Steven Rothenberg, reported Plaintiff delinquent in her child and spousal support payments on March 3, 2000. (Compl. 2.) The Los Angeles County District Attorney filed criminal charges against Plaintiff for this alleged delinquency on May 8, 2000. (*Id.*) At some point in 2001, while the charges were pending against her, an employee from the local child support services agency included Plaintiff on a certified list of obligors who were delinquent in their child support payments to the CDCSS, in accordance with its statutory mandate. As a result, Plaintiff claims that her medical and driver's licenses were suspended for some period of time. (First Am. Compl. 3.)

Eventually, the District Attorney's office acknowledged that Plaintiff had overpaid on her support obligation in prior years, which offset her failure to make payments in the late 1990s. The District Attorney's office conceded that Plaintiff was in compliance with the requirements of the child support order, and the criminal charges against her were dismissed on November 19, 2001. (*Id.* at 4.)

Plaintiff filed a complaint in this Court on September 5, 2002, naming the County of Los Angeles, her ex-husband, and Does 1-10 as defendants. Plaintiff asserted claims for violation of her Fourth and Fourteenth Amendment rights, based on her allegations of false arrest

and false imprisonment. She also alleged state common law claims for malicious prosecution and violation of her right to a speedy trial. (Compl. 4-5.) Plaintiff's complaint centered on the conduct giving rise to the criminal complaint filed against her and her subsequent arrest and prosecution.

Plaintiff filed a first amended complaint on October 22, 2002, removing her ex-husband as a defendant and substituting him with a Los Angeles County employee, Toni Retana, who had submitted an affidavit to the court stating that Plaintiff was in arrears in her child support payments. Los Angeles County and Does 1-10 were still named as defendants. Plaintiff continued to focus her claims on the events giving rise to the criminal prosecution against her. She maintained her prior claims for malicious prosecution and violation of her right to a speedy trial, and she added new claims for false arrest, false imprisonment, violation of her Fourth Amendment right to be free from unreasonable search and seizure, violation of her Fourteenth Amendment due process rights in the suspension of her medical license, and negligent infliction of emotional distress.

In August 2003, the local child support agency again reported to the CDCSS that Plaintiff was delinquent in her child support payments. Plaintiff alleges that this report was again sent to the various California licensing boards. Plaintiff did not discover that the agency had reported her delinquent until October 28, 2003, when a family law judge overseeing her case notified her of the report and informed the state agency that Plaintiff was in compliance with the child support order. (Second Am. Compl. 3.)

On February 2, 2004, Judge Margaret M. Morrow adopted this Court's Report and Recommendation and dismissed Plaintiff's claims

4

against Los Angeles County and Retana with prejudice, based, among other things, on Defendants' immunity from suit. (Dkt. Nos. 43, 47-48.) Judge Morrow also dismissed the Doe defendants from the case without prejudice, granting Plaintiff leave to amend once she identified the Doe defendants and could articulate cognizable causes of action against them.

Plaintiff filed a second amended complaint on August 4, 2004, with only "Does 1-10" named as defendants. In this complaint, Plaintiff fundamentally changed the nature of the action. She shifted the focus of her claims from the alleged violation of her constitutional rights by virtue of the criminal charges filed against her, to the alleged violation of her rights by the county employees who had certified her as delinquent to the CDCSS, which then reported her to the various state licensing boards. She alleged that unknown agency employees had wrongfully certified her as delinquent, which had caused the deprivation of her licenses. Based on this new conceptualization, Plaintiff asserted causes of action for negligence, violations of her Fourteenth Amendment procedural due process rights, libel, retaliation for exercising her First Amendment rights, and violation of her equal protection rights under the Fourteenth Amendment.

On January 30, 2006, Judge Morrow issued an order permitting Plaintiff to serve a subpoena requiring Los Angeles County to divulge the names of the local child support agency employees who had included Plaintiff's name on the list of delinquent obligors. (Dkt. No. 93.) Plaintiff attempted several times in 2006 to serve a valid subpoena on the county, but due to various procedural and substantive deficiencies she was unsuccessful. Amidst a flurry of motions and

objections to this Court's orders filed in the fall and winter of 2006, and due to Plaintiff's attempts to again name Los Angeles County as a defendant in the action, Plaintiff's efforts to serve the subpoenas went by the wayside.

On January 4, 2007, this Court recommended that Plaintiff's suit be dismissed with prejudice, because she had failed to identify and serve the Doe defendants within the time prescribed by law and Judge Morrow's January 30, 2006, order. (Dkt. No. 121.) Under California law, a plaintiff is given three years from the date the lawsuit commences to identify and serve Doe defendants, Cal. Civ. Proc. Code § 583.210(a)(West 2007), and she had failed to do so within that period. Judge Morrow rejected the recommendation on April 19, 2007, concluding that Plaintiff's second amended complaint was so fundamentally removed from the claims and allegations in the original and first amended complaint, that it did not relate back to those initial complaints. (Dkt. No. 131.) Accordingly, Judge Morrow determined that the three-year period for identifying the Doe defendants did not start until the filing date of the second amended complaint on August 4, 2004. Judge Morrow then ordered that Plaintiff identify and serve the Doe defendants no later than August 4, 2007.

On August 9, 2007, this Court granted Plaintiff an extension to file the amended complaint until September 5, 2007, and ordered Los Angeles County to provide the names of the local child support agency employees who had included Plaintiff on the list of delinquent obligors. The county provided the information on August 22, 2007, indicating that the records showing exactly who had transmitted the report had been destroyed years earlier, but that it would have been either Frances Quary, Berta Curry, or Frank Schiavone. The county

also noted that the agency transmits delinquency information to the CDCSS in approximately 200,000 cases monthly. (Dec. of Frances Quary 3.)

Plaintiff filed this motion for leave to amend the complaint on September 4, 2007, with a copy of the proposed third amended complaint attached as Exhibit A. The third amended complaint names Frances Quary, Berta Curry, and Frank Shiavone as defendants, and contends that all three defendants should be held liable because the county "willfully destroyed" evidence. (Third Am. Compl. 2.) Plaintiff also supplements the causes of action from her second amended complaint with seven additional claims, none of which have been previously pled.

The Court concludes that Plaintiff is not entitled to amend her complaint in the manner proposed and denies the motion in its entirety.

**II.  Plaintiff May Not Continue to Include Doe Defendants in the Complaint**

As a preliminary matter, the third amended complaint retains Does 1-10 and states, "This complaint will be amended to include the names of the unnamed employees who acted individually and in concert to inflict injury upon Plaintiff. The exact number of and the identify of the unidentified defendants injuring Plaintiff under each claim is unknown, and their names will be substituted when ascertained." (Third Am. Compl. 2.) However, Plaintiff's time for naming unknown defendants has passed. Under California law and per Judge Morrow's order, Plaintiff had three years from the filing date of the second amended complaint, or until August 4, 2007, to identify

those defendants. Plaintiff may not continue to include Doe
defendants in her complaint indefinitely. Plaintiff's complaint may
now contain only true names of identified defendants, and Doe
defendants will not be allowed.

### III. Plaintiff's Motion to Amend Is Timely Under California Law and Judge Morrow's Order

Under California law, a plaintiff who is unaware of a
defendant's identity may name a Doe defendant in the initial
complaint, then file an amended pleading once the defendant is
identified. The statute provides:

> When the plaintiff is ignorant of the name of a defendant,
> he must state that fact in the complaint...and such
> defendant may be designated in any pleading or proceeding
> by any name, and when his true name is discovered, the
> pleading or proceeding must be amended accordingly....

Cal. Civ. Proc. Code § 474 (West 2007)("Doe statute"). Although the
statute contains no specific time limit for identifying the Doe
defendants and amending the complaint, the California Code of Civil
Procedure requires that a plaintiff serve a summons and complaint on
a defendant within three years of filing an action. *Id.* § 583.210(a)
(West 2007) ("service statute"). If a plaintiff fails to identify and
serve the defendant within the three-year period, the court is bound
to dismiss the action. *Id.* § 583.250(a)(2), (b). Courts have
determined that this time limit for effecting service applies to the
Doe statute. Under this construction, therefore, a plaintiff who
names Doe defendants in the initial complaint has three years to
identify and serve those defendants. *See Munoz v. Purdy*, 91 Cal. App.

3d 942, 947, 154 Cal. Rptr. 472 (1979).

State procedural rules do not apply in federal court cases. However, then-District Judge Harry Pregerson reasoned in *Rumberg v. Weber Aircraft Corp.*, 424 F. Supp. 294, 298 (C.D. Cal. 1976), that the state statutes mentioned above, together, reflected a substantive policy in California to allow plaintiffs three years from the complaint's filing date to discover the identities of Doe defendants. The court found that "California's policy, embodied in [these statutes], to provide a plaintiff extra time to seek out unknown defendants can be conceptually divorced from the merely procedural pleading device of 'Doe' allegations." *Id.* The court concluded that these statutes constituted substantive state law, as opposed to mere procedural rules, and he applied them accordingly. *Id.* at 298-99. The Ninth Circuit adopted this reasoning in *Lindley v. General Electric Co.*, 780 F.2d 797, 800 (9th Cir. 1986), finding that the statutory scheme functionally extended the applicable statute of limitations by three years after the lawsuit's commencement in cases where a plaintiff has named Doe defendants.

Plaintiff seeks to name Frances Quary, Berta Curry, and Frank Schiavone, in their official and individual capacities, as defendants in the third amended complaint. The Court finds that Plaintiff's proposed amendment naming these defendants is timely under California law and the Court's orders.

**IV. Standard of Review**

Although the motion is deemed to be timely filed, it does not necessarily follow that the motion for leave to amend must be granted. Under Federal Rule of Civil Procedure 15(a), leave to amend

should be "freely given" when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Pub. Util. Dist. No. 1 v. IDACORP, Inc.*, 379 F.3d 641, 652 (9th Cir. 2004); *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765 (9th Cir. 1986). This policy is liberally applied. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Whether leave to amend should be granted is generally determined by considering the following factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party. *Foman*, 371 U.S. at 182; *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 926 F.2d 1502, 1511 (9th Cir. 1991)(citing *Hurn v. Retirement Fund Trust*, 648 F.2d 1252, 1254 (9th Cir. 1981)). When these factors weigh against amendment, the Court need not grant leave to amend.

**V. Analysis**

In addition to identifying and naming the Doe defendants, as required by Judge Morrow's order and California law, Plaintiff also attempts to amend her complaint to add seven new causes of action. Judge Morrow's order that Plaintiff amend her complaint anticipated only that Plaintiff would identify the Doe defendants, not that she would initiate an entirely new lawsuit against them. Determining whether Plaintiff's effort to add these new claims is proper requires an inquiry distinct from determining whether she stated a claim against the defendants she attempts to name. Accordingly, the Court will consider each issue in turn.

\\
\\
\\

10

**A. Plaintiff May Not Raise New Causes of Action in Her Proposed Third Amended Complaint**

The new causes of action Plaintiff has included in her proposed third amended complaint are: (1) interference with prospective economic advantage; (2) malicious institution of civil proceedings; (3) abuse of process; (4) violation of the Fair Credit Reporting Act; (5) invasion of privacy, false light; (6) racketeering; and (7) violation of the Fourth Amendment.[3] The Court considers the factors set forth in *Foman* below.[4]

**1. Undue delay and prejudice**

This lawsuit has been pending since 2002. After extensive pleading, re-pleading, motions, objections, and various other filings, the litigation still has yet to go anywhere. Plaintiff was given the opportunity to amend her complaint to name the Doe defendants in 2004, after the named defendants were dismissed. Rather than name the Doe defendants, Plaintiff filed an entirely new complaint alleging completely different claims and injuries. Judge Morrow subsequently determined that these new claims did not relate back to the original or first amended complaints. Now, Plaintiff again seeks to modify the nature of her lawsuit, five years after she first filed it, three years after her most recent amendment, and six years and four years, respectively, after the conduct she complains

---

[3] Plaintiff appears to have abandoned her Equal Protection claim in this version of her complaint.

[4] The Court will not consider Plaintiff's state law claims, because if Plaintiff has failed to state a federal cause of action, which the Court finds to be the case, the Court need not consider the state law causes of action. *See* 28 U.S.C.A. § 1367(c)(3); *Acri v. Varian Assoc., Inc.*, 114 F.3d 999 (9th Cir. 1997)(noting that state law claims "should" be dismissed if all federal claims are dismissed).

11

1  of occurred. The facts have not changed since Plaintiff filed her
2  second amended complaint in 2004, except that more time has passed
3  since the events of which Plaintiff complains. Plaintiff has provided
4  no explanation for her delay in asserting these additional claims,
5  and Plaintiff has had more than sufficient time to consider her legal
6  theories. In addition, permitting Plaintiff's proposed amendment
7  would place Defendants in the position of litigating stale claims
8  which the undue delay prong of the *Foman* analysis is designed to
9  prevent.

10         **2. Bad faith**

11         Plaintiff has already filed three different complaints in this
12  case. The original complaint named Los Angeles County and Plaintiff's
13  ex-husband as defendants, with assorted claims arising from
14  Plaintiff's alleged wrongful criminal prosecution. Plaintiff next
15  filed a first amended complaint removing her ex-husband as a
16  defendant and adding a county employee in his stead. Plaintiff also
17  added several more constitutional and common law claims to her
18  complaint, including intentional infliction of emotional distress.
19  Plaintiff's second amended complaint completely switched gears,
20  focusing on the county employees who included Plaintiff on the
21  delinquency list. Plaintiff presented a new hodgepodge of
22  constitutional and common law claims against the Doe defendants,
23  including an Equal Protection claim alleging that "County employees
24  acted in concert to target the minorities and women for child support
25  enforcement, knowing that they are not represented by counsel and
26  were unable to mount a defense." (Second Am. Compl. 7.) In
27  Plaintiff's proposed third amended complaint, she omits the Equal
28  Protection claim and adds a plethora of entirely new claims yet

again.

It is important to note that the suppositions on which Plaintiff bases her claims have not changed between the second amended complaint and the third. They are: at least one of the defendants reported to the California Department of Child Support Services that Plaintiff was in arrears on her child support payments. Period. Plaintiff has alleged no other conduct undertaken by *these defendants* to support her wide-ranging claims. From this single act - which Plaintiff alleges occurred on two separate occasions, once in 2001 and once in 2003 - Plaintiff raises a host of constitutional claims, intentional tort claims, and even a racketeering claim. Plaintiff alleges that the defendants "willfully," "intentionally," and "maliciously" reported her delinquent in order to "harass, punish,...intimidate," and retaliate against her. (Third Amended Compl. 4-10.) Notably, however, Plaintiff acknowledges that she does not even know which defendant undertook these actions against her: "Plaintiff does not know and cannot now with certainty allege which employees were responsible for each action." (*Id.* at 2.)

Ordinarily, pro se plaintiffs are entitled to a significant measure of liberality in pleading, to ensure that unsophisticated litigants will have their claims heard on the merits and will not be barred from the courtroom as a result of procedural rigidity. That liberality can only go so far, however, particularly where, as here, a plaintiff has completed law school and has been given more than ample opportunity to identify proper defendants and to ascertain any reasonable claims against them.

Having finally discovered the names of the functionaries in the local child support agency who sent the list of obligors in arrears

1    to the state, Plaintiff suddenly sees fit to add a multitude of
2    additional claims that clearly have no legal basis or factual support
3    of any kind, as discussed further below. The only thing that has
4    changed since Plaintiff filed her second amended complaint is that
5    she now knows the names of the unwitting county employees who work
6    in the data department of a county social services office. The Court,
7    in its discretion, need not permit amendment where "[t]he plaintiff
8    merely is seeking to prolong the litigation by adding new but
9    baseless legal theories." *Griggs v. Pace Am. Group, Inc.*, 170 F.3d
10   877, 881 (9th Cir. 1999)(citation omitted). It is clear that this is
11   exactly what is happening in this case.

12       The proposed new claims against the defendants are baseless and
13   frivolous. Plaintiff's inclusion of the racketeering claim in
14   particular suggests that her purpose in asserting new claims is
15   simply to expand and prolong the litigation. To state a claim for
16   racketeering, under the Racketeer Influenced and Corrupt
17   Organizations Act (RICO), 18 U.S.C.A. § 1961-1968 (West 2007),
18   Plaintiff must allege that Defendants "conducted [an] enterprise
19   through a pattern of racketeering activity." *Sedima, S.P.R.L. v.
20   Imrex Co., Inc.*, 473 U.S. 479, 522, 105 S. Ct. 3275 (1985);
21   *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1310 (9th Cir.
22   1992). The statute defines "racketeering activity" as "any act or
23   threat involving murder, kidnapping, gambling, arson, robbery,
24   bribery, extortion, dealing in obscene matter, or dealing in a
25   controlled substance..., which is chargeable under State law and
26   punishable by imprisonment for more than one year [or a violation of
27   several enumerated federal statutes]." 18 U.S.C.A. § 1961(1).
28   Plaintiff alleges that Defendants "participated in a pattern of

1  extortion, by wrongfully preventing [her] from practicing medicine[,]
2  defrauded [her] out of over $17,000 in child support that all parties
3  now agree that she did not owe, and took her licenses." (Third Am.
4  Compl. 10.)

5      California law defines extortion as "the obtaining of property
6  from another, with his consent, ... induced by a wrongful use of
7  force or fear, or under color of official right." Cal. Penal Code §
8  518. There is no dispute that the only action these defendants
9  undertook was forward reporting data to the state agency that
10 Plaintiff was in arrears on her child support payments. Plaintiff has
11 not alleged that these defendants received any monetary benefit
12 either directly or indirectly from Plaintiff, nor did they
13 "illegally" obtain her property. Moreover, Plaintiff cannot seriously
14 suggest that she ever consented to give up any property, though she
15 does make some attempt to do so in her proposed complaint. (Third Am.
16 Compl. 10 ("Defendants took Plaintiff's license ... ostensibly with
17 Plaintiff's agreement because Plaintiff never knew when her licenses
18 were being suspended until long after the suspensions had
19 occurred.").) Under no interpretation of the facts alleged in
20 Plaintiff's proposed amended complaint have these defendants
21 committed any act even remotely resembling a RICO violation.
22 Plaintiff's inclusion of this claim in particular is patently
23 frivolous and smacks of bad faith.

24      **3. Futility**
25     The final factor to consider in weighing Plaintiff's motion to
26 amend is futility. Futility alone may justify denial of a motion to
27 amend. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004); *Klamath-*
28 *Lake Pharmaceutical Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d

1276, 1293 (9th Cir. 1983). Expiration of the statute of limitations, for example, renders a cause of action futile, *Deutsch v. Turner Corp.*, 324 F.3d 692, 718 n. 20 (9th Cir. 2003), as does failing to state a valid claim, *see Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1101 n. 1 (9th Cir. 1999). The Court will address each of Plaintiff's proposed federal causes of action below under this futility standard.

### a.   Fair Credit Reporting Act

Plaintiff asserts that Defendants violated the Fair Credit Reporting Act, 15 U.S.C.A. § 1681s-2 (West 2007) ("FCRA"), by reporting inaccurate balances, failing to correct disputed credit information, and failing to note that the balance is disputed. (Third Am. Compl. 8.) The FCRA imposes certain obligations on furnishers of information to credit reporting agencies, including the requirement of providing accurate credit information and of correcting erroneous information previously reported. 15 U.S.C.A. § 1681s-2(a).

Violations of 15 U.S.C.A. § 1681s-2(a) and (c) "shall be enforced *exclusively* as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title." *Id.* § 1681s-2(d)(emphasis added). The statute does not provide a private right of action for violations of those sections. *See Pirouzian v. SLM Corp.*, 396 F. Supp. 2d 1124, 1127 (S.D. Cal. 2005); *see also Cisneros v. Trans Union, LLC*, 293 F. Supp. 2d 1167 (D. Haw. 2003)(finding that consumers may not bring suit for the provision of inaccurate or false information to a credit reporting agency).

However, the Ninth Circuit determined in *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057 (9th Cir. 2002), that a

1   private right of action may exist under 15 U.S.C. § 1681s-2(b), which
2   governs disputes over reported credit information. This section
3   permits a private cause of action only where the consumer notifies
4   the consumer reporting agency of a dispute with a furnisher of credit
5   information and the consumer reporting agency then notifies the
6   furnisher that there is a dispute. *Roybal v. Equifax*, 405 F. Supp.
7   2d 1177, 1179-80 (E.D. Cal. 2005)(citing *Nelson*, 282 F.3d at 1060).
8   Once the furnisher receives notice of the dispute from the consumer
9   reporting agency, the statute outlines the requirements for
10  investigating and resolving the dispute. 15 U.S.C.A. § 1681s-2(b).
11  If the consumer skips the consumer reporting agency and directly
12  notifies the furnisher of credit information, the furnisher is not
13  obligated to investigate and there is no private right of action.
14  *Roybal*, 405 F. Supp. 2d at 1180 (citing *Nelson*, 282 F.2d at 1060).
15  Having failed to allege that she notified the consumer reporting
16  agency of the dispute, that the consumer reporting agency notified
17  the defendants, and that the defendants then failed to comply with
18  the steps set forth in 15 U.S.C. § 1682s-2(b), Plaintiff has failed
19  to state a claim for relief.

20      Although ordinarily the Court could grant Plaintiff leave to
21  amend to correct these deficiencies, Plaintiff cannot state any facts
22  to support her claims for another reason: the defendants are not
23  furnishers of credit information as contemplated by the statute. Only
24  furnishers of credit information, consumer reporting agencies, or
25  users of credit information may be held liable under FCRA. *See*
26  *Marshall v. Gravitt*, 2007 WL 1792416, *3 (D. Nev. June 18,
27  2007)(citing *Nelson*, 282 F.3d at 1060). Defendants clearly are not
28  either a consumer reporting agency or users of credit information.

"Furnisher of credit information" refers to someone who provides credit information to consumer reporting agencies. *Id.* Plaintiff has not alleged that these defendants reported the delinquency to a credit reporting agency. As discussed above, the sole action that the defendants took was to transmit to the CDCSS a list of delinquent obligors that included Plaintiff. The fact that the CDCSS, a state agency independent of the local child support agency for which Defendants work, may have subsequently reported Plaintiff to a credit reporting agency does not make these defendants furnishers of credit information. The Court finds that there is an insufficient nexus between these defendants and the subsequent report to a consumer credit agency to render these defendants furnishers of credit information under the statute. Accordingly, they cannot be held liable under the FRCA.

Amending the complaint to add this cause of action would be futile. Further, Plaintiff can allege no facts that would render Defendants furnishers of credit information, and the deficiency cannot be cured.

### b. Fourth Amendment

Plaintiff alleges that Defendants "violated Plaintiff's Fourth Amendment right to be free of unreasonable search and seizure by repeatedly taking Plaintiff's medical license without any judicial authority." (Third Am. Compl. 11.) In this claim, Plaintiff is essentially reiterating her due process claim, rather than a cognizable Fourth Amendment violation. The Court finds that the suspension of a professional license is not a search or seizure within the meaning of the Fourth Amendment. *See Gerling Global Reinsurance Corp. v. Low*, 296 F.3d 832, 851 (9th Cir. 2002), *rev'd*

1   *on other grounds*, *American Ins. Ass'n v. Garamendi*, 539 U.S. 396

2   (2003).

3                    **c. Racketeering**

4       Having discussed the frivolousness of Plaintiff's racketeering

5   claim above, the Court will not reiterate its analysis and

6   conclusions here. Suffice to say, Plaintiff has failed to state a

7   claim for relief under 18 U.S.C.A. § 1961-1968, and an amendment

8   adding that claim would be futile.

9                    **4. Conclusion**

10      Of Plaintiff's new federal causes of action, only three are

11  federal claims. Because, as discussed above and below, the Court

12  concludes that none of the federal causes of action are viable, the

13  Court will not consider the state law claims raised either in the

14  second or third amended complaint. Plaintiff's motion for leave to

15  amend, to the extent it seeks to add additional causes of action, is

16  **DENIED.**

17      **B. Plaintiff's Remaining Causes of Action Fail to State a Claim**

18  **Against These Defendants**

19      After rejecting Plaintiff's attempt to add new claims for

20  relief, the Court turns its focus to the federal claims Plaintiff

21  included in the second amended complaint. Although the motion to name

22  the Doe defendants is timely, Plaintiff must still state viable

23  causes of action against those defendants in order to amend her

24  complaint. The Court concludes that she has failed to do so.[5]

25  _____

26          [5] As a further reason for denying leave to amend, the Court notes
    that it is likely that the statute of limitations has expired for
27  Plaintiff's 2004 claims arising from the 2001 delinquency report. In
    2001, when the original conduct of which Plaintiff complains occurred,
    a one-year statute of limitations was in effect for section 1983
28  claims. *See Scott v. Garcia*, 370 F. Supp. 2d 1056, 1063 n. 7 (S.D. Cal.

**1. Due Process**

Plaintiff alleges that Defendants violated her Fourteenth Amendment due process rights by suspending her medical and driver's licenses without notice or the opportunity to be heard.[6] (Third Am. Compl. 4.) The Court first notes that the newly named Defendants did not suspend her licenses - the state licensing agencies effected the suspensions. Moreover, Plaintiff cannot identify the actual defendant who sent the particular delinquency report at issue to the state, and she has named as defendants each of the three people who may have done so. However, membership in a group is insufficient to establish liability for a constitutional violation, absent some evidence of personal participation. *See Jones v. Williams*, 297 F.3d 930, 934-35 (9th Cir. 2002)("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights

2005). Although Plaintiff timely filed her original and first amended complaints in 2002, Judge Morrow determined that the claims in the second amended complaint, filed in 2004, did not relate back to the original or first amended complaint. Accordingly, the statute of limitations for the 2001 conduct already had expired when Plaintiff filed the second amended complaint. Although the statute of limitations was extended to two years in 2003, a legislative modification of a statute of limitation's length does not resurrect those claims for which the statute of limitation already has expired, *id. (citing Maldonado v. Harris*, 370 F.3d 945 (9th Cir. 2004)), and even the two-year period would have expired before 2004 in any event. Accordingly, any claims for relief based on conduct that occurred in 2001 are barred by the statute of limitations.

However, because the Court must still address whether Plaintiff has stated a claim for relief against these defendants for the 2003 delinquency report, the Court will not further elaborate on its statute of limitations analysis at this point.

[6] The Court will assume without deciding for purposes of this opinion that Plaintiff has a property interest in those licenses that would be protected by the Fourteenth Amendment. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)(noting that protected property interests stem from "an independent source such as state law").

deprivation....")(citations omitted).  Although Plaintiff's theory of recovery against these defendants rests entirely on their membership in the group of people who transmit child support delinquency reports to the state, the Court will not further analyze whether this fact bars Plaintiff's claims, because the Court finds that Plaintiff has failed to state a claim on substantive grounds.

Plaintiff's procedural due process claim against Defendants follows a fairly long, circuitous route.  Plaintiff alleges that Defendants transmitted a certified list of delinquent child support obligors to the state agency, CDCSS. She alleges that the CDCSS then notified the state medical board, the Department of Motor Vehicles, and the United States Department of State of the delinquency. Plaintiff alleges that those agencies then undertook various adverse actions against Plaintiff, which Plaintiff claims violated her constitutional rights. Plaintiff now seeks to recover damages from the people who initiated the process.

Plaintiff neglects to mention that the act of transmitting the certified list is mandated by statute, as are the subsequent actions by the medical board and Department of Motor Vehicles. *See* Cal. Fam. Code § 17520(a), (b) (West 2007). Plaintiff does not allege that the statute itself is unconstitutional, nor has she named the agencies who actually took the adverse action against her. Plaintiff appears to be basing her claims on the fact that one of the defendants transmitted information that incorrectly identified her as being delinquent in her support payments,[7] which ultimately resulted in her

---

[7] The Court notes that Plaintiff had not been making her payments when she was reported as delinquent. Although the family court ultimately determined that her prior overpayments were sufficient to cover her non-payment, there is no question that Plaintiff had stopped

1   licenses being suspended, and not that the process leading to the
2   suspension itself is fundamentally flawed. The Court must determine
3   whether the issue as Plaintiff has framed it states a claim for
4   relief. The Court finds that it does not.

5        The United States Supreme Court in *Daniels v. Williams*, 474 U.S.
6   327, 106 S. Ct. 662 (1986), held that a government actor's negligent
7   conduct causing a property deprivation does not give rise to a
8   procedural due process claim. The Court noted, "Far from an abuse of
9   power, lack of due care suggests no more than a failure to measure
10  up to the conduct of a reasonable person. To hold that injury caused
11  by such conduct is a deprivation within the meaning of the Fourteenth
12  Amendment would trivialize the centuries-old principle of due process
13  of law." *Id.* at 332. Plaintiff does not specifically contend that
14  Defendants' negligence, if any, constituted a due process violation,
15  but she does assert a common law negligence claim. To the extent that
16  the negligence claim overlaps with the due process claim, the law is
17  clear that negligence cannot constitute a Fourteenth Amendment due
18  process violation.

19       Plaintiff's proposed complaint also suggests that Defendants
20  acted intentionally when transmitting the delinquent list with
21  Plaintiff's name on it to the state, which deprived her of a property
22  interest in her licenses. (Third Am. Compl. 4.) However, if a
23  government actor's intentional deprivation of property is random and
24  unauthorized, and the state provides adequate postdeprivation
25  remedies, then there is no due process violation. *Hudson v. Palmer*,
26  468 U.S. 517, 533 (1984). The reason for this approach is that the
27
28  making monthly support payments at that time.

22

Constitution prohibits not the deprivation itself, but a deprivation without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)(citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), *overruled on other grounds by Daniels*, 474 U.S. at 330-31)). Although ordinarily the government is required to provide due process before a deprivation occurs, where the deprivation occurs as a result of random and unauthorized conduct, it is impossible for the government to provide predeprivation process. *Id*. at 127-28. In such circumstances, an adequate postdeprivation remedy will satisfy the Fourteenth Amendment due process requirements. *Id*.

In this case, the circumstances leading to the deprivation are somewhat unusual, in that Defendants did not actually effect the deprivation. Instead, at most, Defendants may have been part of a series of events that ultimately led to the deprivation. Assuming that the causal relationship between Defendants' action and the deprivations is sufficiently close to treat them interchangeably, the action was without question random and unauthorized. If Plaintiff's allegations are true and Defendants knowingly and intentionally reported her as delinquent, Defendants clearly failed to follow the requirements of the statute, which mandate that Defendants include only those obligors who are actually delinquent. The government could not possibly have foreseen that the employees whose job it is to certify lists of delinquent obligors would risk their employment by knowingly including someone on the list who was not in fact delinquent. As the Western District of Washington aptly noted, section 1983 "should not be employed to remedy deprivations which occur at the hands of state employees who are acting in direct contravention of state policies, procedures, and requirements that

were designed to guarantee the rights of its citizens." *Wright v. Fred Hutchinson Cancer Research Ctr.*, 269 F. Supp. 2d 1286, 1294 (W.D. Wash. 2002)(noting that due process "requires that the state provide constitutionally adequate procedures" but "does not guarantee their flawless implementation in every instance").

In addition, the Court finds that the California statutes governing the procedures for reporting and initiating adverse consequences for child support delinquencies provide more than adequate process to the obligors included on the list. Under the statute, a licensing board must immediately notify the listed obligor of the board's intent to withhold the license's renewal or issuance or to suspend the license. Cal. Fam. Code § 17520(e)(2), (e)(3)(B). The obligor may be given a temporary license valid for 150 days. *Id.* § 17520(e)(2)(A). If the obligor disputes his or her inclusion on the certified list, the statute directs the obligor to notify the child support agency in writing of the dispute. *Id.* § 17520(h). The obligor may request judicial review of compliance or a modification of the support judgment or order. *Id.* § 17520(j).

It is impossible to ascertain from the complaints to what extent Plaintiff availed herself of the statutory remedies for disputes. However, the Court need not (and cannot, under the Federal Rules) inquire into those facts further, because Plaintiff did seek judicial review to establish her compliance with the child support order, and she was ultimately successful. (Third Am. Compl. 4.) Indeed, with respect to the 2003 delinquency, Plaintiff learned that she had been reported delinquent at the same time the family law judge notified the child support agency that she was compliant. (*Id.*) The post-deprivation remedy was clearly adequate.

24

1   As the Supreme Court in *Daniels* explained, "[W]e should not
2   'open the federal courts to lawsuits where there has been no
3   affirmative abuse of power.'" 474 U.S. at 329 (quoting *Parratt*, 451
4   U.S. at 548-49). The Court finds that the statute provides adequate
5   process before, during, and after the suspension of an obligor's
6   licenses. Plaintiff successfully availed herself of that process. She
7   has alleged no due process violation under the Fourteenth Amendment,
8   and amending the complaint to assert this claim against these
9   defendants would be futile.

10                  **2. First Amendment Retaliation Claim**
11   Plaintiff contends that Defendants again listed her as
12   delinquent in 2003 to retaliate against her for filing this lawsuit
13   in 2002. (Third Am. Compl. 6.) While the government "may not deny a
14   benefit to a person on a basis that infringes his constitutionally
15   protected interests - especially, his interest in freedom of speech,"
16   *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694 (1972),
17   Plaintiff has failed to provide any factual basis of any kind to
18   support her claim that Defendants' actions were retaliatory. A
19   properly pled retaliation claim would include allegations that
20   Plaintiff spoke out on a matter of public concern and that she was
21   retaliated against because of that speech. *See Connick v. Myers*, 461
22   U.S. 138 (1983).

23   Pro se pleadings are held to a less stringent standard than
24   those drafted by a lawyer, *Haines v. Kerner*, 404 U.S. 519, 520
25   (1972)(per curiam), but the rule of liberal construction "applies
26   only to a plaintiff's factual allegations." *Neitzke v. Williams*,
27   490 U.S. 319, 330 n.9 (1989). A court need not accept as true
28   unreasonable inferences or conclusory legal allegations cast in the

form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)("[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled."). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level...." *Bell Atlantic Corp. V. Twombly*, 127 S. Ct. 1955, 1965 (2007).

Plaintiff has included no factual allegations to support her retaliation claim and instead has merely recited certain claim elements. Accordingly, she has failed to state a claim for retaliation against these defendants.

## VI.  Conclusion

Although Plaintiff's motion to amend to name the three Doe defendants is timely, the motion is substantively deficient. Plaintiff may not amend the complaint to add new causes of action. The Court finds that the proposed new claims are precluded because of undue delay, bad faith, and futility.  In addition, Plaintiff has failed to state a viable claim against the three newly named defendants with her remaining causes of action. Finally, because Plaintiff failed to state a viable federal cause of action, the Court declines to exercise supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367(c). For these reasons, Plaintiff's Motion for Leave to Amend is **DENIED.**

Dated: January 17, 2008

MARC L. GOLDMAN
_____
Marc L. Goldman
United States Magistrate Judge

26